* * * * * * * * * * *
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as: *Page 2 
 STIPULATIONS
1. The North Carolina Industrial Commission has jurisdiction of this claim.
2. The parties were subject to the North Carolina Workers' Compensation Act at the time of Plaintiff's December 23, 1998 and July 24, 1999 work injuries.
3. An employment relationship existed between the parties at the time of Plaintiff's December 23, 1998 and July 24, 1999 work injuries.
4. Plaintiff sustained admitted specific traumatic incidents on December 23, 1998 and July 24, 1999.
5. Plaintiff's average weekly wage is $398.16, yielding a compensation rate of $265.45 per week.
6. The parties stipulated to the following documents being admitted into evidence as Stipulated Exhibit one (1), consisting of medical records and documentation as follows:
 a. North Carolina Industrial Commission forms and filings for both file numbers;
 b. Prior Opinions and Awards of the North Carolina Industrial Commission dated August 5, 2004 and October 17, 2005;
 c. Plaintiff's Discovery Responses;
 d. Medical records from Dr. Paul Eugene Brown, Dr. Scott Michael McCloskey, Western North Carolina Rehabilitation Center, Dr. Michael Christopher DeSantis, Dr. Maher Fahim Habashi, Dr. Kenneth Laurence Leetz, and Dr. Hans Christian Hansen;
 e. Correspondence to and from counsel for Plaintiff and Rhoney Furniture House and Selective Insurance Co. (hereinafter referred to as *Page 3 
"Defendants"), as well as accompanying documentation dated October 17, 2005, February 2, 2006, May 17, 2006, and December 21, 2006.
 * * * * * * * * * * * ISSUES
The issues for determination are:
1. Whether Plaintiff suffered a compensable change of condition?
2. Whether Defendants failed to timely comply with the October 17, 2005 Opinion and Award issued by the Full Commission in this matter?
3. Whether sanctions or additional benefits would be appropriate in this case?
 * * * * * * * * * * *
Based upon the competent and the credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is a 68-year-old female who began working for Rhoney Furniture House (hereinafter referred to as "Defendant-Employer") in May 1995 as a furniture salesperson. As part of her duties, Plaintiff would occasionally move furniture items to the loading dock or to customers' cars. Plaintiff used a dolly to move large pieces of furniture, such as sofas, weighing up to 250 pounds, but would carry lamps, pictures, and dining room chairs.
2. On December 23, 1998, Plaintiff injured her back as she and a co-worker carried a silver chest out to a customer's car. The chest weighed approximately 75 pounds. Plaintiff fell to the floor in pain after loading the silver chest and returning to the store.
3. Defendants accepted Plaintiff's December 23, 1998 work injury as compensable. Plaintiff sought treatment from Dr. Reid Zenter, a chiropractor, and from her family physician as *Page 4 
a result of her December 23, 1998 work injury. Plaintiff continued to work at her regular job following the December 23, 1998 work injury, although Plaintiff later became disabled from earning wages from February 6, 1999 through February 8, 1999 as a result of this work injury.
4. On July 24, 1999, Plaintiff was lifting a ring of upholstery fabric swatches, which weighed between 25 to 40 pounds when she felt pain in her back. As the day progressed, Plaintiff began to have difficulty walking.
5. Defendants accepted Plaintiff's July 24, 1999 work injury as compensable. However, Defendants did not file any documentation with the North Carolina Industrial Commission, as required under the provisions of the North Carolina Workers' Compensation Act.
6. Initially, Plaintiff returned to Dr. Zenter for chiropractic manipulation following her July 24, 1999 work injury. Later, Defendants referred Plaintiff to Dr. Paul Eugene Brown, an orthopaedic surgeon. Plaintiff saw Dr. Brown on July 26, 1999 for complaints of lumbar strain. On that date, Dr. Brown provided a note authorizing Plaintiff to return to work on August 2, 1999 with no work restrictions. Plaintiff thereafter saw Dr. Jeffrey Andrew Knapp, a partner of Dr. Brown. Dr. Knapp referred Plaintiff to Dr. Scott Michael McCloskey, a neurosurgeon, after magnetic resonance imaging (MRI) revealed a possible left-sided lumbar nerve root sheath tumor.
7. Dr. McCloskey first saw Plaintiff on August 27, 1999. Dr. McCloskey recommended that Plaintiff undergo surgery for the mass at the L1 level of the spine, which he suspected to be a neural sheath tumor, or a disk herniation. On September 2, 1999, Plaintiff underwent a laminotomy at the T12-L1 level of the spine, a partial hemi-laminectomy at the L1-L2 level of the spine, excision of the disk fragment at the L1 level of the spine, and a left medial *Page 5 
facetectomy, all performed by Dr. McCloskey.
8. Following Plaintiff's September 2, 1999 surgery, Dr. McCloskey ordered a functional capacity evaluation (FCE) in order to determine what, if any, physical limitations she would retain which would affect her ability to work. According to the FCE conducted on March 9, 2000, Plaintiff gave sub-maximal effort, inconsistent performance, and engaged in self-limiting behavior throughout the FCE. Plaintiff then participated in a work-hardening program in order to prepare her for a gradual return to work.
9. On June 19, 2000, Plaintiff returned to work with Defendant-Employer on a gradually increasing schedule. Plaintiff received work restrictions consistent with the results of another FCE conducted on June 2, 2000, which included working for four (4) hours per day for two (2) weeks, followed by six (6) hours per day for two (2) weeks, and then eight hours per day thereafter. By July 6, 2000, Plaintiff was working in her previous full-time, full-duty capacity position.
10. By August 16, 2000, Dr. McCloskey noted that Plaintiff was doing exceptionally well with her return to full-time, full-duty work. On November 13, 2000, Dr. McCloskey opined that Plaintiff reached maximum medical improvement, and he released her from his care. Dr. McCloskey further opined that Plaintiff sustained a 20 percent permanent partial disability to her back as a result of her July 24, 1999 work injury.
11. As a result of Plaintiff's July 24, 1999 work injury, she received temporary total disability benefits from July 26, 1999 through June 19, 2000, and temporary partial disability benefits from June 19, 2000 through July 5, 2000. Plaintiff returned to her pre-injury wages on July 6, 2000.
12. On January 7, 2002, Plaintiff presented to Dr. Michael Christopher DeSantis, her *Page 6 
family physician since November 2000, for a recheck on her hypertension, and for treatment of stress and depression. At that time, Plaintiff complained of difficulties with her boss, Mr. Reggie Rhoney, concerning her job status since her July 24, 1999 work injury. Plaintiff also discussed problems relating to her daughter's alcoholism. Dr. DeSantis found Plaintiff's depression to be multifactoral, and prescribed Celexa in order to treat it. In later visits, Dr. DeSantis also prescribed a variety of pain medications in an attempt to relieve Plaintiff's continued complaints of chronic back pain.
13. Plaintiff continued to work full-time, full-duty for Defendant-Employer until sometime in January 2002, when Defendant-Employer filed for bankruptcy. Plaintiff was the first employee that Defendant-Employer laid off due to the closing of the business. Although Plaintiff had work restrictions, she was capable of earning pre-injury wages at the time Defendant-Employer laid her off from work in January 2002.
14. On June 3, 2002, Plaintiff began working at Benjamin's Fine Clothiers, where she earned approximately $204.00 per week, working 24 hours per week. Plaintiff last worked for Benjamin's Fine Clothiers on or about April 12, 2003.
15. In correspondence dated March 23, 2003, Dr. DeSantis suggested that Plaintiff should not work in any employment due to the effect on her quality of life. Sometime after April 12, 2003, Plaintiff resigned her employment with Benjamin's Fine Clothiers and began to receive Social Security Disability benefits.
16. Plaintiff returned to Dr. McCloskey on August 5, 2002, at which time she complained of problems lifting over 10 pounds, and that her back would "seize up" on her. Dr. McCloskey advised Plaintiff that the muscle spasms were a natural consequence of the September 2, 1999 surgery. Based upon Plaintiff's pain complaints, Dr. McCloskey assigned *Page 7 
permanent work restrictions to not lift over 10 pounds, to avoid twisting and bending, and to alternate between sitting and standing.
17. Plaintiff underwent another MRI in April 2003, which revealed scar tissue in the surgical area, inflammation at the L1-L2 level of the spine, annular tears at the L2-L3 and L3-L4 levels of the spine, and bulges at the L4-L5 and L5-S1 levels of the spine. The annular tears at the L2-L3 and L3-L4 levels of the spine were new conditions, which were the probable cause of Plaintiff's increased level of back pain, according to Dr. McCloskey. However, Dr. McCloskey also found these annular tears to be unrelated to Plaintiff's July 24, 1999 work injury, stemming instead from a degenerative process.
18. In the August 5, 2004 Opinion and Award and the October 17, 2005 Amended Opinion and Award (hereinafter referred to as the "Full Commission Opinion and Award"), the Full Commission found the annular tears at the L2-L3 and L3-L4 levels of the spine to be unrelated to Plaintiff's July 24, 1999 work injury, and to not constitute a compensable change of condition. Further, the Full Commission found that Plaintiff's December 23, 1998 and July 24, 1999 work injuries jointly caused the bulges found at the L4-L5 and L5-S1 levels of the spine, and that Plaintiff was at a risk of recurrent disk rupture as a result of her September 2, 1999 surgery. Additionally, the Full Commission found Plaintiff's depression to be either caused or exacerbated by the December 23, 1998 and July 24, 1999 work injuries, her chronic pain, and her work status. Finally, the Full Commission found that Plaintiff would likely benefit from a referral to a chronic pain specialist. As a result of these findings, the Full Commission concluded that Defendants were not liable for additional temporary total disability benefits or temporary partial disability benefits, but that Defendants were liable for permanent partial disability compensation, based upon a 20 percent permanent partial disability rating to Plaintiff's *Page 8 
back, as well as treatment for depression and an evaluation with a chronic pain specialist. The Full Commission also concluded that Plaintiff regained her pre-injury wage-earning capacity by July 6, 2000, and the problems at the T-12 and L1-L2 levels of the spine, which required surgery, as well as the disc bulges at the L4-L5 and L5-S1 levels of the spine, were compensable.
19. Plaintiff requested that Defendants comply with the Full Commission Opinion and Award by correspondence dated October 17, 2004 and May 17, 2006, as well as by the filing of a Form 33 on February 2, 2006 and March 22, 2007.
20. Due to Defendants' unwillingness to provide Plaintiff with the treatment for depression and an evaluation with a chronic pain specialist ordered by the Full Commission Opinion and Award, as well as Plaintiff's worsening condition, she made her own attempts to arrange for such treatment with her family physician, Dr. DeSantis. Plaintiff and her husband testified that her condition was substantially worse, in that her subjective rating of her level of back pain at and around her September 2, 1999 surgical site was now 12, with 10 being the highest number on the scale.
21. Dr. DeSantis testified that Plaintiff's condition was substantially worse as of April 3, 2006, in that Plaintiff's increased level of back pain could not be controlled by her current medication regime, and that her level of back pain now required 10 milligrams of Oxycontin twice per day. Dr. DeSantis further testified that as a result of Plaintiff's worsening condition with respect to her increased level of back pain and her depression, she became completely unable to work as of at least April 3, 2006. Also a result of Plaintiff's deterioration with respect to her increased level of back pain and her depression, Dr. DeSantis referred Plaintiff to Dr. Kenneth Laurence Leetz, a psychiatrist, and to Dr. Douglas Dussel Pritchard, an anesthesiologist.
22. On February 12, 2007, Plaintiff first presented to Dr. Kenneth Laurence Leetz, a *Page 9 
psychiatrist, for treatment. Dr. Leetz diagnosed Plaintiff with major depression and chronic pain disorder. Dr. Leetz opined that Plaintiff's July 24, 1999 work injury caused Plaintiff's major depression and chronic pain disorder. Further, Dr. Leetz opined that Plaintiff became unable to work since at least March 21, 2007.
23. According to the parties at the October 28, 2008 hearing before the Full Commission, Defendants are now paying for Plaintiff's psychiatric treatment with Dr. Leetz, as well as for her anti-depressant medications. The Full Commission finds as fact that the psychiatric treatment rendered by Dr. Leetz for Plaintiff's major depression and chronic pain disorder is related to Plaintiff's July 24, 1999 work injury, and such treatment is reasonably required to effect a cure, to give relief, and/or to lessen Plaintiff's period of disability.
24. On February 21, 2007, Defendants referred Plaintiff to Dr. Hans Christian Hansen. Dr. Hansen was of the opinion that Plaintiff was not exaggerating her complaints and symptoms, and that she was being truthful and forthright. Dr. Hansen further opined, and the Full Commission finds as fact, that Plaintiff's increased level of back pain was in the T12-L1 and L1-L2 levels of the spine, the areas previously operated upon by Dr. McCloskey, and that the unrelated annular tears Plaintiff previously complained about at the L2-L3 and L3-L4 levels of the spine do not tend to be chronic problems. Based upon Dr. Hansen's examination of Plaintiff, he recommended that she continue to receive pain clinic treatment, and that she be restricted to part-time, sedentary work.
25. Although Defendants indicated a willingness to provide pain clinic treatment pursuant to Dr. Hansen's recommendations, they have not, as of yet, either approved of or paid for the pain clinic treatment recommended by Dr. Hansen and ordered by the Full Commission Opinion and Award. The Full Commission finds as fact that the recommendation from Dr. *Page 10 
Hansen concerning Plaintiff's need for pain clinic treatment is related to Plaintiff's July 24, 1999 work injury, and that such treatment is reasonably required to effect a cure, to give relief, and/or to lessen Plaintiff's period of disability. The Full Commission further finds that the recommendations from Dr. Hansen concerning Plaintiff's need for pain clinic treatment should have been approved. Defendants' delay in approving the pain clinic evaluation ordered in the prior Full Commission Opinion and Award and their failure to comply with Dr. Hansen's recommendations are both unreasonable and unfounded.
26. The Full Commission further finds, based upon the greater weight of the evidence, that Plaintiff suffered a compensable change in condition with respect to both her increased level of back pain, which is now more severe than it was following her July 6, 2000 return to full-time, full-duty work, and her depression, which is now more severe, according to medical and psychiatric testimony. Both the increased level of back pain and the more severe depression are causally related to Plaintiff's July 24, 1999 work injury, and caused her to become totally disabled as of March 2007. Dr. Leetz opined that Plaintiff was unable to work in any type of employment, as of March 21, 2007. Dr. DeSantis opined on March 23, 2003 that Plaintiff should not work in any employment due to the effect on her quality of life. Nevertheless, Plaintiff continued to work through April 12, 2003, and Dr. DeSantis later testified that Plaintiff's increased level of back pain substantially increased by April 6, 2006, necessitating the administration of Oxycontin. Although Dr. Hansen opined that Plaintiff is capable of working in a part-time, sedentary capacity, the Full Commission finds that any attempt on the part of Plaintiff to pursue such work would be futile, given Plaintiff's age, work history, and current medical/psychiatric condition. Although the Full Commission gives great weight to the opinion of Dr. DeSantis concerning the progression of Plaintiff's back pain and depression; however, the *Page 11 
Full Commission gives greater weight to the opinion of Dr. Leetz on the time period in which Plaintiff became totally disabled due to her more severe depression diagnosis and chronic pain disorder.
27. During the course of the hearing before the Deputy Commissioner, the parties stipulated that the date of the last compensation paid to Plaintiff was January 17, 2006. Based upon the medical and lay testimony of record, the Full Commission finds that Plaintiff's compensable change of condition occurred on or about March 21, 2007. Thus, Plaintiff's compensable change of condition occurred within two (2) years of the date of the last compensation paid to Plaintiff.
 * * * * * * * * * * *
Based upon the foregoing stipulations and upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. As found by the prior Full Commission Opinion and Award, Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of her employment on December 23, 1998. N.C. Gen. Stat. § 97-2(6) (2007). Plaintiff's December 23, 1998 work injury did not require payment of any type of disability compensation.
2. As found by the prior Full Commission Opinion and Award, Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of her employment on July 24, 1999. N.C. Gen. Stat. § 97-2(6) (2007). Plaintiff's July 24, *Page 12 
1999 work injury resulted in payment of temporary total disability benefits from July 26, 1999 through June 19, 2000, and temporary partial disability benefits during the healing period from June 19, 2000 through July 5, 2000. Plaintiff returned to her pre-injury wages on July 6, 2000. In addition, Plaintiff's July 24, 1999 work injury resulted in payment of permanent partial disability compensation, based upon a 20 percent permanent partial disability rating to her back. N.C. Gen. Stat. § 97-31(23) (2007).
3. Plaintiff sustained a compensable change of condition with respect to both her increased level of back pain since July 6, 2000, which is now so severe as to render her totally disabled, and her depression, which is now more severe and related to her July 24, 1999 work injury, according to medical and psychiatric testimony. N.C. Gen. Stat. § 97-47
(2007); Lucas v. Bunn Mfg. Co., 90 N.C. App. 401, 368 S.E.2d 386 (1988). As a result of this material change in condition, Plaintiff is totally incapable of earning wages. Plaintiff established, through the medical opinions of Dr. Kenneth Laurence Leetz and Dr. Michael Christopher DeSantis that she became unable to work in any type of employment by March 21, 2007. Though Dr. Hans Christian Hansen is of the opinion that Plaintiff is capable of working in a part-time, sedentary capacity, any attempt on the part of Plaintiff to pursue such work would be futile, given Plaintiff's age, work history, and current medical/psychiatric condition. Russell v. Lowes Product Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993).
4. Plaintiff is entitled to have Defendants pay for all reasonable medical/psychiatric expenses incurred or to be incurred as a result of her July 24, 1999 work injury, for so long as such medical/psychiatric treatment may be required to effect a cure, to give relief, and/or to lessen Plaintiff's period of disability, including, but not limited to, continuing psychiatric treatment by Dr. Kenneth Laurence Leetz, as well as the pain clinic treatment recommended by Dr. Hansen. N.C. Gen. Stat. §§ 97-2(19), 97-25 (2007). Since Plaintiff already established the compensability of her treatment for chronic back pain and depression, the burden now shifts to Defendants to establish that the original finding of compensability is unrelated to Plaintiff's *Page 13 
current pain and depression. Parsons v. Pantry, Inc., 126 N.C. App. 540,485 S.E.2d 867 (1997). However, Defendants failed to meet this burden.Id.
5. Defendants' failure to comply with the Full Commission Opinion and Award, and with the pain clinic treatment recommended by Dr. Hansen was unreasonable and unfounded. Accordingly, Defendants should be sanctioned with payment of part of Plaintiff's attorney's fee. N.C. Gen. Stat. § 97-88.1 (2007).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay temporary total disability compensation at the rate of $265.45 per week to Plaintiff for her compensable change in condition from March 21, 2007 and continuing until further order of the Industrial Commission.
2. Defendants shall pay for all medical expenses incurred or to be incurred in the future as a result of Plaintiff's July 24, 1999 work injury, including, but not limited to, injury related treatment provided by Dr DeSantis, psychiatric treatment by Dr. Kenneth Laurence Leetz, as well as the pain clinic treatment recommended by Dr. Hans Christian Hansen for so long as such treatment is reasonably required to effect a cure, provide relief, or lessen Plaintiff's disability.
3. Defendants shall pay Plaintiff's counsel a reasonable attorney's fee of twenty-five percent of the compensation awarded to Plaintiff herein. As to the accrued compensation due Plaintiff, Defendants shall pay to Plaintiff's counsel twenty-five percent without deduction from *Page 14 
the amount due Plaintiff pursuant to N.C. Gen. Stat. § 97-88.1. Thereafter every fourth check due Plaintiff shall be deducted and paid directly to his counsel.
4. Defendants shall pay the costs of these proceedings.
This the ___ day of December 2008.
S/_______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_________________ DANNY LEE McDONALD COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1